at all. Oral argument not to exceed 15 minutes per side. Ms. DeMasi for the appellate. Good morning. May it please the Court, Karen DeMasi on behalf of Appellant BlueCross. I would like to reserve three minutes for rebuttal. Very well. This appeal presents a straightforward ERISA question. Can a planned fiduciary sue to and join a state agency from challenging a benefits determination on behalf of one of its citizens? Well, it begs the question whether they're doing that. Going after a fiduciary. If one looks at this, New Hampshire does not seem to be saying, BlueCross, you failed to administer this plan in an appropriate way when you denied benefits. It would instead seem to be saying, you're violating New Hampshire law when you sell this policy in our state. And so you should be fined and we're going to tell you you can't do it anymore. And meanwhile, they're not seeking relief on behalf of the patient at issue here. So why aren't they acting against BlueCross as an insurer rather than as a fiduciary? Your Honor, that does go to the crux of the issue. And the answer lies in the show cause order. The show cause order seeks, and it's at page ID 25 to 29, the show cause order is directed to a single citizen's benefits determination. That's evidence though, isn't it? I mean, that's how they find out about these things. An individual has a problem, it doesn't make it an action on her behalf, it's just her case is evidence. Correct. But if you look at the show cause order, at the context for the show cause order, at the evidence, and at the penalties, the show cause order is directed to a determination of benefits. So let me go through those. But, I mean, if we look at the penalty, it has nothing to do with BC. It's just saying pay this penalty because you violated New Hampshire law and you can't, you know, if it's successful, you can't do business in New Hampshire because you violated New Hampshire law. It's not specific to BC. Your Honor, in fact, the penalty that the state seeks, $52,500, is the 21 denials of benefit for BC. It is her 21 denials of benefits, that single citizen, multiplied by a $2,500 fine. So even the penalty that the state seeks is tethered to a determination of benefits. It's tethered, but there's no indication it would go to her. It's not compensatory damages. That, Your Honor, respectfully isn't the issue. The question is whether the show cause order is directed to a fiduciary determination. And what the Supreme Court said in Davila is that a benefits determination, what the show cause order seeks and is directed to, is a fiduciary act. They're not ordering you to pay her benefits. I mean, I assume her fertility treatments were way more than $52,000, I guess. So they're not saying as a remedy you need to pay her claims. No. They are imposing, seeking to impose, a remedy that is outside the ERISA remedies for benefits determination. In fact, Your Honor, if you look at the only exhibits that the state seeks to put in in support of this, it's her denials of benefits. It's not the policy. Unlike when you look at the MetLife case, which I'm happy to get to and explain how MetLife is different, MetLife was directed at the policies. What the Massachusetts AG there was saying was that the policies were problematic, not a determination of benefits. And here, the only witness was going to be B.C. The exhibits were going to be her denials of benefits. And the penalty that the state was seeking was for her 21 denials of benefits. This is not an act that is directed at the policies or that is directed at the benefit mandate. It is directed as it is a state standing in the shoes and bootstrapping the benefits determination of a single citizen in order to bring the show cause order. It had been like 20 citizens who worked for this company in New Hampshire. They all got their claims denied. They complained to their insurance regulator. Is that different? I mean, I don't know how else the insurance regulator goes about knowing that there are violations of New Hampshire law except when citizens complain. So I think, Judge Larson, it would be different and it would be a more difficult case if it were a number of citizens. The Massachusetts AG in the MetLife case brought on behalf of all citizens who had policies from those insurers that it sued. And by the way, big difference in MetLife as well. The Massachusetts AG was able to plead and allege and attach to the complaint the fact that Massachusetts regulated those insurers, something that is absent from the show cause order. The show cause order isn't even 20 citizens. The show cause order is a single citizen, a single benefits determination. And when you look at paragraph 2, 3, 4, 5, when you look at the issues presented, they are all about the coverage determination. And that is the problem. So it isn't Blue Cross's position that New Hampshire could never seek to enforce its statute. It can't do it through the show cause order. It can't do it this way because this show cause order violates ERISA. So there are two ways for a state to enforce or for a party to enforce a benefits mandate. There is the participant suit. That's way one. And by the way, each of these ways furthers a goal that Congress had in connection with ERISA. So way one is that there's a participant suit. That is the type of suit BC could have brought. It's the type of suit that the plaintiff brought in Unum. In the Unum case, it's under ERISA 501. I can't bring that as you're violating New Hampshire law, see the Scherfel case that we had in our circuit. That case goes nowhere. It's totally preempted because she must bring it against the plan administrator. And the plan administrator can follow the terms of the plan in making a particular determination. I mean, that's totally preempted. She can't do a thing here. She might be able to bring a suit. Unlike in Scherfel, Judge Ketledge, this is a safe state law. So we don't dispute that it's a safe state law. So in a participant claim, what BC could have done and would have done, and there's no question she couldn't seek the penalties the state is seeking here. It's just the regulatory action that's saved. It's not the mandate shall be honored by everybody. Then let's get to the regulatory action. So the other path that is available, and it's the path that ERISA says honors state law, that is the goal of this path, is the MetLife path. It is the case that a state could seek to bring on behalf of itself and its citizens to enforce its state law against a jurisdiction on which it has personal jurisdiction. I'm sorry, against a defendant on which it has personal jurisdiction, and within its constitutional rights to regulate that defendant. Both of those things are absent, at least from the show cause order. So regulation is done by the executive, among the three different powers of government. Regulation is done by the executive, and the executive does not need to bring a lawsuit to regulate. The executive can instead act directly on the person or entity that the executive thinks is acting contrary to law. There will be judicial review in the end if the person subject to coercion wants it. But New Hampshire did not need to bring a federal suit to exercise its undisputed regulatory power. How is that wrong? In other words, it could do a show cause proceeding like they did. They could have done a show cause proceeding. They could try to seek personal jurisdiction and try to say that the New Hampshire law applies. This show cause order doesn't do that. It doesn't do that. What it tries to do is to bootstrap a single citizen's benefits determination on behalf of, as far as it can tell, that single citizen. What it's seeking is, again, it's seeking a penalty that is outside of the ERISA-exclusive penalties for benefits determinations that are tethered to her denials. Didn't they threaten an order that would bar Blue Cross from selling this policy in New Hampshire? That was the second type of relief. That's really regulatory, isn't it? Well, and I think there's... That sure looks like we're just here to enforce our law. I think there's... And we know you've been violating it because we heard about this case. I think there's two problems with that. Number one is because I see the show cause order and because we believe that this is related to the benefits determination in that context, that remedy would be a preempted remedy under DEVILA. And what DEVILA says is that any other remedy outside of ERISA would be preempted. Even a state-saved law cannot seek remedies that are preempted by ERISA when they are in the context of a benefits denial. They have power to regulate. That means they have power to enforce their laws regarding insurance, right? I mean, that's what that means. Agree. Agree.  And so if they have that power, then they can say to somebody as an exercise of their regulatory power, you are violating our law when you take this particular action, namely selling a policy that does not provide certain benefits. Knock it off. Stop. We're telling you you can't do that anymore. I mean, that seems classically regulatory. And again, Blue Cross's position isn't that New Hampshire cannot do that if it seeks to do that. Again, it has to have personal jurisdiction if it's going to hail Blue Cross into a New Hampshire court, state or federal. And it has to be able to regulate. But our position isn't that they can't do it. They haven't done that here. That isn't what the show cause order does. The show cause order attacks what is fundamentally a fiduciary act. That is what Davila says. A benefits determination is a fiduciary act. And to the extent the fiduciary is in a mixed role as both a fiduciary and insurer, Davila answers that as well. What Davila says is that classifying an entity with a benefits determination as anything other than a fiduciary violates ERISA. That is what Davila says. So to the extent you see this as a mixed role, Davila answers that question. So again, it's not that New Hampshire can't. It's that it hasn't done so here. Do you want to ask? Yeah. I guess I just don't understand how this case becomes different if we have the exact same show cause order, but as their evidence, they give evidence that you've sold policies to 50 people in New Hampshire that don't include fertility treatments. You said that would be fine. No, I said it would be different. I said it would be a closer case, respectfully. I do think that would be a more difficult case if it was brought on behalf of more. Why? What if this is the only example they have? I think it would be a case that is... You've only sold a policy. You're a startup. I mean, I know you're Blue Cross, but you're a startup insurance company, and you sold your first insurance policy in New Hampshire, and it violates New Hampshire law, and they're like, nope, out of here. We're going to enforce our law. Why can't they do that? To be clear, Blue Cross Blue Shield of Tennessee hasn't sold any policies in New Hampshire. That is part of the issue. But you can argue that in the New Hampshire forum, right? Yes, and if that's where it comes to, we will make that argument in the New Hampshire forum. Again, I think that MetLife lays out the roadmap for what the state can try to do, what the state of New Hampshire, what kind of suit New Hampshire can try to bring. They don't have to sue people to regulate. I mean, I just don't see that. MetLife isn't the only... I mean, MetLife, it's not like you have to bring a lawsuit. Not everything has to be done by a lawsuit. They can regulate. Yeah, I'm not saying it has to be done by a lawsuit as opposed to by a show cause order, but there's some significant differences. If you look at MetLife, again, it is directed to the policies. It's not directed to a single benefits determination, and it attaches as Exhibit A and Exhibit B to the complaint. Again, it could be a show cause order, certificates demonstrating that it regulates that insurer. And those are absent here, which we think is important in terms of how the court erroneously reviewed the show cause order. And we think this is important, and let me just explain why. If the district court decision is left as it is, it would mean that any state could sue a fiduciary to redress a single citizen's denial of benefits, and it would mean that a state could do this and effectively force a fiduciary to comply without ever having to establish that it actually has regulatory authority over that insurer. But why can't you contest their regulatory authority in New Hampshire? Why can't you just say, we don't do business in New Hampshire, we don't sell insurance in New Hampshire, therefore we're outside of your regulatory power? The New Hampshire administrative proceeding will either say yes or no, and then you'll have a right to appeal. We can and we will if we end up in New Hampshire. The case that we brought here, because there is binding authority that the district court did not consider, the Thiokol case, the Booha case, that says a fiduciary can seek to enjoin an act that violates ERISA. And again, we believe that this show cause order violates ERISA. A fiduciary can. That's what the statute says. Participants, fiduciaries. All right, you're going to have your rebuttal. Thank you. We'll hear from Mr. Garland. Welcome to the Sixth Circuit. Thank you. It's kind of exciting having somebody from New Hampshire here. It's exciting to be somewhere other than New Hampshire, Your Honor, as much as I love the state, for those watching. I would like to go kind of to the last point opposing counsel made, Your Honor, which is that if the district court's order stands here, then it means that New Hampshire can do what it's doing here, which is enforce New Hampshire regulatory authority, insurance regulations, for really a single instance in the state where a company is both an insurer and a planned fiduciary. That's right, and I don't dispute that. And U.S. Supreme Court case law supports that proposition. If you look at the MetLife decision, the Supreme Court took pains in that decision to recognize that there is a tension that exists within ERISA. There's a tension between broad preemption and the uniformity that it's designed to achieve, and this carve-out in the saving clause, which is a broad carve-out. And Justice Blackmun said in that case, there is this tension. Congress would do well to fix it, but we're going to take the saving clause as what it says, and it's a broad carve-out that preserves regulatory authority. And that's exactly what the MetLife case did, and that's exactly what, as you've been asking, or Judge Cutledge, New Hampshire's doing here. It's seeking through its normal course to enforce a New Hampshire insurance regulation that's well within the saving clause, and you're not really hearing any argument that it's outside of the saving clause. As we were initially reading the brief, you know, we thought there was kind of an argument that was being made for the first time in the brief with respect to a fact-based threshold question as to what's the real purpose of how New Hampshire is enforcing this against Blue Cross and Blue Shield. And we raised a forfeiture argument there. I don't really think that argument is actually the one that's being put forward through the reply brief or through the argument that you're hearing today, but I would just like to make the procedural point that we've made in our brief, that Blue Cross Blue Shield sought to resolve this case quickly through a partial motion for summary judgment where it insisted that there was a choice of law question that could turn as a question of law. It would resolve counts one through three of its complaint as a matter of law, and it resisted discovery and ultimately persuaded the court below with our reluctant acquiescence that we didn't get to go into discovery about its contacts with New Hampshire or any of those sorts of questions because there was this legal question. And so if there still is an argument in this case that, well, but the district court really overlooked this threshold fact question that deals with the insurance commissioner's intent in terms of how to proceed against Blue Cross Blue Shield, whether it's intent as a fiduciary or as an insurer. I do think that has been forfeited through litigation conduct below, but beyond that I'll rest on our brief and not really belabor that point. You know, a lot of the argument in this case goes to the question whether the New Hampshire, who's the official here doing this as commissioner, right? Whether the commissioner is acting in a regulatory capacity or acting in what? Prosecutorial? I don't know. Or, I mean, how, I mean, they say that he is seeking relief, you know, kind of a compensatory capacity as opposed to regulatory, I guess. In your view, how ought we to determine or distinguish between those two? Like what would you, you know, you work for the government there. I mean, like, you know, what are the kind of the hallmarks of acting in a regulatory capacity as opposed to taking action to try to get relief for a particular individual? Sure, Your Honor. I don't want to resist the question, and I do intend to answer it, but I think there is a threshold assumption in that question that I take issue with, which is that when an insurance regulator is seeking to enforce state insurance law, that it's ever doing anything specifically for the benefit of a beneficiary. I mean, in this case, as I think a number of questions have pointed out, how else is an insurance regulator going to know that there potentially is unlawful insurance practice in the state? So I think if the court were to start to go down a road where it's trying to kind of parse out as a matter of fact, okay, what were you really doing here, that has the potential to erode the saving clause, which really is a broad protection for states to enforce state insurance laws. So you are saying that it is okay for you to be acting on behalf of a particular person, or are you saying that's not what we are doing? Or are you saying both? It would be okay, but that's not what we're doing. I might be saying part of part one and two. So certainly it's okay to regulate, and I think that's well established. And as the district court noted rhetorically, and a number of you have noted, how else is a regulator going to be able to regulate if it isn't informed by specific individuals who are planned beneficiaries? I mean, it's very unlikely Blue Cross Blue Shield of Tennessee would have come into New Hampshire and said, hey, we have products that are here, they don't comply with your law. Sorry, right? I don't think that would have happened. But I think I would point the court first to Kentucky Association Health Plans in a statement that Justice Scalia had in that case, which is really, I think, where we disagree with opposing counsel over the focus of this, whether the focus is some sort of intent to regulate versus intent to enforce against a planned beneficiary, or whether it's really just like a quintessential question of does the saving clause reach this conduct, and if so, go back to the state regulatory proceeding. And in that case, there's the statement that says, the saving clause is not concerned with how to characterize conduct undertaken by private actors, but with how to characterize state laws in regard to what they regulate. And here, there's no dispute, this is a state law that regulates the practice of insurance. And so, really, I don't think the inquiry, based on that statement, really turns at all on kind of what the private actor says it's doing in New Hampshire or how it views its role in New Hampshire. Just to clarify, here, is New Hampshire acting on behalf of B.C. or just as a regulator or both? I think it's acting just as a regulator, but through a complaint that was brought to it by B.C. And that might be going more directly to answer your question, Judge Larson, which is- So, in the same way that a criminal prosecutor, a victim comes and says, I was assaulted, they bring their action not on behalf of the victim, but on behalf of the people of the state, but they learned about the violation of the state's law through the victim. I think that's a great analogy, Judge Larson. And the point I'd make, too, which is really the second point that took me a long time to get to, and several of you have pointed this out, and I think it goes to your question, too, Judge Mathis, is there is nothing here to indicate they're trying to do anything specifically to benefit the victim in this case. So the fine, how is the fine calibrated, and will any of it be paid to B.C.? So to the second part of that question, I'm actually not sure of the answer to that. I don't know specifically whether it would be remitted to B.C. I don't believe it would be because the fine, though it is based on specific instances of alleged unlawful insurance practice within New Hampshire that B.C. brought to the attention, is a statutory-based fine. It's not based on, okay, this was the cost of the fertility treatment. So the statute says for each violation, it's X dollars. That's my understanding, Your Honor. I don't have that statute right in front of me, but that's my understanding. And the district court made that observation, too, that it doesn't appear that this is forming restitution for or designed to compensate. It's designed to be a quintessential regulatory fine. That's how regulators oftentimes enforce it. Like one of these $10,000 a day. It's analogous. That sort of idea. Yes, Your Honor. I mean, just pure hypothetical, not this case. But if the same commissioner did a show cause order and requested only or was seeking only an order that you have to pay the amount that this person paid for, let's say it was an MRI or something. That's it. Would that arguably differ? Or, you know, is that a question of would there have to be a factual determination there about what's the, you know, is this regulatory? I don't think so, Your Honor, for a couple of reasons. I think the first reason, and I'd go back to the Kentucky case, is that that doesn't appear to really be the inquiry. It's whether are you doing something that fits within the saving clause. And I think that inquiry focuses on the regulation, not really the underlying conduct. But to use Judge Larson's example, that doesn't seem very different to me from criminal restitution, right? I mean, restitution exists in criminal cases, and it specifically is designed to allow victims of crimes to recruit the harm for the harm they suffered, and that would still be on behalf of the people, though. Sure, but the issue there is there's no ERISA in there saying, well, you can, if it's, if you're interfering with their duties as a fiduciary, then the only way to enforce that is through ERISA. I mean, you don't have that problem in the rest, you don't have some competing law. So it might be analogous, it's just you've got ERISA standing in the way. I mean, it seems to me like if you wanted to say, here's a show cause order, it's just like this, but the remedy I'm seeking is either you pay the victim, you pay B.C.'s claims, or you pay the state of New Hampshire an amount equal to the amount of her unpaid claims and we give them to B.C. That does seem like an ERISA runaround. I'm not sure it would be, Judge Larson. Okay. The reason I just said, which is it is kind of just the criminal analogy, but I get your point with respect to ERISA being a different overlay, but I don't think ERISA contemplates in its terms or any Supreme Court or Sixth Circuit case contemplates that it allows to kind of bring a lawsuit that allows you to kind of micro-focus on different components of a state regulatory scheme or state regulatory enforcement action and try to wipe those out through an injunctive relief. It appears to contemplate that on the one hand there's broad preemption and on the other hand there's the saving clause, and the saving clause is broad, and what states do through that saving clause is saved. I mean, and so I think it falls within that latter category. What I would say, too, is that seems to me to be an argument that Section 502A of ERISA, which allows for a fiduciary or others to bring, not states, by the way, I'll get to that point in a second, to bring a specific action somehow preempts the saving clause in some way, like that it limits the ability for a state regulator, and the Supreme Court, I think, has largely rejected that argument, and I think this Court did in Theocle, too. The Supreme Court said in Fran Chi's Tax Board, Section 502 neither creates nor expressly denies any cause of action in favor of state governments to enforce, and in that case it was tax levies, but then they went on to say, or for any other purpose, and the saving clause makes clear that Congress didn't intend to preempt entirely every state cause of action regulating such plans. And so I think the language there undermines an argument that isn't really made in this appeal, but I think it underlies the appeal, which is there's this exclusive remedy through Section 502, and this state enforcement action is somehow impeding that. That seems to me to largely be a preemption argument that isn't asserted and that I think has been already carved out by Supreme Court case law and by this Court's decision in Theocle, too, which parrots what the Supreme Court said in Fran Chi's Tax Board. Going again to Section 502 as well, I do think there's a bit of conflation going on by Blue Cross Blue Shield between the ability to bring an action in federal court, that have a right of action under federal law to enforce that federal law in federal court, and being entitled to any specific remedy. I mean, you've already heard a couple of arguments today, and a lot of what I do at work deals with Section 1983 or the ADA or Section 504, which provides a private party or categories of private parties the ability to bring a lawsuit. It doesn't mean they're entitled to an injunction or to damages. There can be law-based or fact-based defenses to those, and in this case the saving clause basically provides that defense, and that's what the district court appeared to recognize. It rejected our motion to dismiss for lack of jurisdiction and said, you're wrong about that. There's a federal statute that lets them bring this lawsuit, but then it ultimately agreed that the saving clause was basically a defense to the lawsuit. They can't prevail on their specific theory under Section 502A because the saving clause precludes them from doing so. But, I mean, I thought your argument was even antecedent to that, which is they're not somebody who can bring this suit. They're not a fiduciary. They're not a participant, et cetera. Or am I wrong on that? I think there's a nuance there, Judge Kethledge. The argument we initially made in our motion to dismiss was basically that. There's no jurisdiction. They can't do it. Judge Greer said, well, they are a planned fiduciary. Oh, but it's jurisdiction. There's just no cause of action. Sure, sure. Yeah, there's no federal. There's no basis for them to be trying to do what they're doing. Fighting 502, that doesn't let you seek relief. It's not jurisdiction. But go ahead. Sure, and maybe my distinction is just a semantic one, and I'm not sure it's substantive at all. But I think what Judge Greer said here is, well, they do allege they're a planned fiduciary, and we're going to take the pleadings for what they say, and we're going to so they can bring this lawsuit in court. But then ultimately the case kind of flows from there, and he says, but you're also an insurer. There doesn't appear to be a dispute that they're an insurer, and you can't do what you're trying to do here, which is stop a state regulatory enforcement action because of the saving clause. And in my view, that isn't their ability as a planned fiduciary to bring a lawsuit. It's their ability to prevail by virtue of the saving clause. But that may be a distinction without a difference. It may be. Going just to that last point, though, for the last minute I have, I think you've heard quite a bit in the reply brief and in the arguments today about their contacts with New Hampshire. We are not an insurer with New Hampshire. We're not doing the business of insurance in New Hampshire. That sounds an awful lot to me like a due process argument. That's an argument that we shouldn't be subject to their regulatory jurisdiction because we don't have enough contacts with that state to be subject to it. They specifically did not assert that argument. They asserted below that they weren't bringing that argument based on the view that they couldn't bring it in the Eastern District of Tennessee due to personal jurisdiction concerns. And so I think you're exactly right, Judge Larson, that maybe that is a relevant inquiry in front of the regulatory agency. You can't regulate us because we don't do the business of insurance here. But that is not a question that is part of this case. It's a question they've specifically foreclosed bringing because it's really a personal jurisdiction question. I'd note, too, they resisted any discovery we tried to do into that specific question. When they raised kind of a quasi-due process argument in their partial motion for summary judgment, we propounded discovery. We wanted to know, what are you doing in New Hampshire? And they said, wait, this is just a question of law. We don't want to respond to that. We shouldn't need to respond to that. So there's been that procedural wrinkle there, too. I see that I'm out of time. Any questions? All right. Thank you. Appreciate your argument, your rebuttal. I will take just a couple of minutes to respond. Sure. With respect to this last issue about regulation and due process, our point is not that there was a due process argument below or that we asserted a due process argument below. The point is that the fact that the show-cause order does not exert regulatory authority, it lacks that aspect, is further demonstration that the show-cause order is directed to a benefits determination. And again, while I hear the skepticism... What does that mean, directed to, as opposed to just based on? What is directed to? Is it trying to reverse it? It is trying to reverse it. But they don't seek to coerce... They do seek to reverse it. They don't seek to coerce Blue Cross to pay the actual amount, you know, that this person paid for her fertility treatments. It's just the statutory formula. They don't. So, like, what is directed at, the thing? I mean, why isn't that just based on? Directed at, based on, I think it is the same, Judge Kethledge. It is a... It is my way of expressing that the show-cause order is all about the benefits decision. Again, if you look at every single paragraph, while it has some statutory provisions cited, while it has these penalties that are cited, it is about the benefits decision. But what about Judge Larson's analogy? Let's say there is an assault case, and the prosecutor brings, you know, gets an indictment, and they are just seeking to put this person away, and it is all about the assault, but it is not a compensatory action. It is a regulatory action in the sense that they are enforcing their law, albeit in a criminal setting. Isn't that right? I understand that analogy, and that is right in that context. ERISA has a special context. ERISA is a special statute that has a civil enforcement scheme that is exclusive. That is the purpose of Section 502A. If anyone wants to be able to reverse a benefits decision, an individual benefits decision, that is what we are talking about here, it has to go through Section 502A. But how are they reversing the benefits decision if they are not saying pay the claim, pay BC's claims? I mean, I feel like BC is going to be like, great, I am glad you got them fined, but I am really upset. I wanted my fertility treatments paid for, and if you had reversed my benefits determination, I would get them paid for. This is why there is an enforcement scheme that requires exclusive remedies. The remedy for reversing the denial should be BC's treatments. If she got it, denial should be. The point is that is not what they are trying to do. They are trying to enforce their law and make somebody stop selling insurance that is illegal to sell in New Hampshire, is the way I understand it. When I say reverse the denial, I am looking at Paragraph 5 of the Show Cause Order. That is literally what it asks for. In the Statement of Issues in Paragraph 7 and 8, it talks... Tell me which paragraph. Paragraph 5. It says that throughout June and July of 2021, New Hampshire has requested that Respondent reverse the denial for BC's treatment, and Respondent failed to accede. It is looking for the reversal of the denial. Or we are giving you a fine and telling you to get out of our state and stop selling insurance here. Not, and therefore you must pay. And therefore the Statement of Issues set forth that it is related to the coverage decision for BC. But the penalty doesn't indicate anything about trying to reverse the decision. It is fine based on the statute and don't do business in the state anymore. The penalty, in our view, is an improper remedy because ERISA sets forth exclusive remedies for denials, for coverage, for BC's treatment. Does the penalty money go to BC? Do you know if there is a penalty? I don't know what New Hampshire does with the fines and the penalties it receives. I know that the $52,500, and the District Court got it wrong before. He looked at it and said $52,000 has no relationship to BC. The $52,500 is BC's denials. It's the 21 denials. And so, again, it is... Can we just clarify this? She submitted 21 claims, was denied 21 times, and there's some statutory multiplier? Correct. There is a statute in New Hampshire that says the violation is $2,500 per violation. Again, the interpretation of what a violation is is a subject of New Hampshire law, obviously. But that is, it is tethered. My only point is the penalty is tethered to BC. It is not tethered to the policies. It is not tethered to enforcement of the policies. And I do hear a skeptical panel. I would implore you to go back and look at MetLife. MetLife is different. If you look at pages 734 and 735 of the Supreme Court decision, it is all about the policies. It is about the policies and coverage of the policies. I'll look at that. Okay. I promise. All right, thank you. Thank you, Your Honor. Ms. DeMasi. Thank you both for your arguments, and the clerk may adjourn court.